UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYAN ORTON,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN STEVIE KNIGHT,<br><br>    Respondent. | Case No. 22–cv–03387–ESK<br><br>OPINION |

**KIEL, U.S.D.J.**

Petitioner Ryan Orton filed this petition for writ of habeas corpus under 28 U.S.C. §2241 (Petition) (ECF No. 1) challenging the disciplinary sanctions against him for possession of a hazardous tool: a cell phone. Respondent Warden Knight opposes the Petition. (ECF No. 10.) For the following reasons, the Court will deny the Petition.

### I. FACTS AND PROCEDURAL HISTORY

Petitioner challenges a disciplinary hearing that found him guilty of possessing a cell phone at FCI Berlin, New Hampshire.[1] (ECF No. 1.) Petitioner arrived at FCI Berlin on December 26, 2019. (ECF No. 10–1 p.10.) He was placed into a "cubicle … designed to hold [two] inmates with two single beds, two lockers, and two chairs." (ECF No. 1–3 p. 3.) "The lockers and beds were bolted to the floors and thus immovable." (*Id.*) Petitioner was alone in the cubicle, but he states that it did "not have any doors and [was] open for access by anyone within the housing unit." (*Id.*)

---

[1] Even though the Petition challenges disciplinary sanctions imposed at petitioner's prior place of confinement at FCI Berlin, New Hampshire, this Court has jurisdiction over the Petition as petitioner was confined at FCI Fort Dix, New Jersey when he filed the Petition.

FCI Berlin staff conducted a mass search of the housing area on January 16, 2020. All inmates were taken to the dining area while "staff systematically searched all areas of the camp living quarters." (ECF No. 10–1 p. 17.) Staff members found eight cellphones beneath eight different lockers. (*Id.*) "At no point were any lockers moved or tilted upon staff entering the living area to conduct the mass search. The cellular telephones that were discovered under the lockers were placed there previously and not before or during the search." (*Id.*) Phones were also found in the common area pool tables and trash cans. (*Id.*) Staff member B. Beegle found a phone underneath petitioner's locker. (*Id.* pp. 18, 19.)

Beegle wrote an incident report charging petitioner with Prohibited Act 108, possession of a hazardous tool, which is a Greatest Severity Level Prohibited Act. *See* 28 C.F.R. § 541.3 (Table 1) (prohibiting possession of a hazardous tool, which includes "a portable telephone, pager, or other electronic device.") (ECF No. 10–1 p. 15.) Lieutenant Sloan delivered the incident report to petitioner on January 17, 2020. (*Id.*) Petitioner had no comment on the charges at that time. (*Id.* p. 16.) Lieutenant Sloan recommended that the incident be referred to the unit discipline committee for further review. (*Id.*)

Petitioner appeared before the unit discipline committee on January 21, 2020. (*Id.* p. 15.) He waived his right to a staff member representative and denied the charges, stating "I just got here 20 days ago and moved to that cell." (*Id.*) He asked that the phone be sent out for forensic investigation. (*Id.*) The unit discipline committee concluded the charge should be referred to a disciplinary hearing officer for a hearing. (*Id.*) *See also* 28 C.F.R. § 541.7(a)(4) (stating charges for Greatest or High severity prohibited acts will be automatically referred to a disciplinary hearing officer). Petitioner received his notice of rights that same day and waived his right to a staff member

2

representative. (*Id.* pp. 22, 23.) He did not request any witnesses. (*Id.* p. 23.)

Disciplinary hearing officer N. Hayden conducted a hearing on January 22, 2020. (*Id.* p. 14.) Petitioner denied the accusations, stating "I just got off the bus 20 days ago. No fingerprints on it are mine." (*Id.*) Officer Hayden relied on Beegle's statement about finding the phone in petitioner's assigned area and the fact that "no other inmate [is] assigned to the bunk area" to conclude the greater weight of the evidence supported a finding that petitioner committed the prohibited act. (*Id.*) He noted that inmates are "responsible for all items found in their assigned living area and should immediately report any unauthorized item to the Unit Officer." (*Id.*) Officer Hayden sanctioned petitioner with the loss of 41 days of good conduct time and a one-year loss of phone privileges. (*Id.*)

Petitioner appealed Officer Hayden's decision, arguing that he should not be held responsible for something found in a common area. (*Id.* p. 38.) "My cubicle area is open to the general population and every inmate had access to this area without my knowledge or possibly left hidden there before I moved in." (*Id.*) He argued there was no physical evidence, such as fingerprints or phone records, connecting him to the phone. (*Id.*) The Bureau of Prisons' (Bureau) northeast regional director denied the appeal on May 6, 2021. (*Id.* p. 37.) The Bureau general counsel denied petitioner's final appeal on September 28, 2021. (*Id.* p. 39.)

## II.   LEGAL STANDARD

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Muhammad v. Close*, 540 U.S. 749 (2004). A prisoner challenging a disciplinary action resulting in the loss of good time credits may bring such claims under 28 U.S.C. §2241, "as the action could affect

the duration of the petitioner's sentence." *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (per curiam).

Title 28, Section 2243 of the United States Code provides in relevant part:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

28 U.S.C. § 2243. A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* habeas petition must be construed liberally. *See Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002)).

## III. DISCUSSION

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." *Denny v. Schultz*, 708 F.3d 140, 143–44 (3d Cir. 2013) (internal citations and quotation marks omitted). In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In addition to a hearing before an unbiased factfinder, inmates must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)

(citing *Wolff*, 418 U.S. at 563–67).  "[A] prison disciplinary decision need only be supported by 'some evidence' in order to satisfy due process." *Denny*, 708 F.3d at 145 (citing *Hill*, 472 U.S. at 454).

Petitioner argues that there was not enough evidence to justify the sanctions.  (ECF No. 1–3 p. 5.)  He states the cell phone problem at FCI Berlin is well known, and "[a] facility which holds upwards of over 100 inmates is frequently searched and often staff find more cell phones than there are inmates." (*Id*. p. 6.) "Many have not been used for some time and may have been used by or belonged to inmates who are no longer at the facility.  In this way, they may be the equivalent of landmines buried and left behind years after combatants have stopped fighting and left the field of battle." (*Id*.)  Petitioner maintains that the Bureau should have tested the phone for fingerprints or conducted a forensic search of the phone before charging him with possession of the phone.  (*Id*. pp. 6, 7.)

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56.  This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 F. App'x 84, 86–87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455).  "Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." *Cardona v. Lewisburg*, 551 F. App'x 633, 637 (3d Cir. 2014).

There is enough evidence in the record to support Officer Hayden's decision.  Code 108 prohibits the "[p]ossession, manufacture, introduction, or

5

loss of a hazardous tool," which includes electronic devices such as cell phones. 28 C.F.R. § 541.3 (Table 1). The Third Circuit accepts the collective responsibility theory in prison disciplinary cases, stating:

> In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

*Denny*, 708 F.3d at 146. Beegle found the cell phone underneath the locker assigned to petitioner, and no one else was assigned to that cubicle. (ECF No. 10–1 p. 15.) That is enough for this Court to uphold the sanctions.

Petitioner's arguments that the Bureau should have conducted a fingerprint analysis or forensic search of the phone to prove ownership are unpersuasive. Petitioner was charged with possessing the phone, and it was found within his area of control. In other words, "possession of the contraband, not its ownership, was the only relevant consideration." *Bacon v. Ortiz*, No. 19–11023, 2021 WL 1138137, at *6 (D.N.J. Mar. 25, 2021); *see also Donahue v. Grondolsky*, 398 F. App'x 767, 772 (3d Cir. 2010) ("[I]dentifying the true owner of the SIM card … by verifying the cellular phone number assigned to it and/or revealing the list of calls made and received would not have exonerated Donahue of possession of contraband."). Petitioner was housed in the cubicle for three weeks before the phone was found, which is more than enough time to be held responsible for the contents of the cubicle.

I find that there is some evidence in the record to support the disciplinary sanctions and that the Bureau did not err by not conducting further tests on the phone. The Court denies the Petition.

## IV. CONCLUSION

For the reasons stated above, the Court will deny the Petition. An appropriate Order accompanies this Opinion.

                                                       */s/ Edward S. Kiel*
                                                 **EDWARD S. KIEL**
                                                 **UNITED STATES DISTRICT JUDGE**